UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

GOPAL BURGHER and SCOTT JAFFE
              Plaintiffs,

  - against -                                            12 CIV 4042 (WHP)

B. SETH BRYANT
              Defendant.

-----------------------------------------------------------X

## MEMORANDUM OF LAW IN SPPORT OF
## PLAINTIFFS' ORDER TO SHOW CAUSE

                                              JOSHUA E. FINGOLD, Esq., of Counsel to
                                              ALLAN J. BERLOWITZ, Esq.
                                              1700 Broadway
                                              21st Floor
                                              New York, NY 10019
                                              (516) 336-9025

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTUAL BACKGROUND.................................................................................................2

ARGUMENT..........................................................................................................................4

    I.     PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER BECAUSE THEY WILL SUFFER IRREPARABLE HARM IF THE STATUS QUO BETWEEN THEM AND DEFENDANT BRYANT IS NOT MAINTAINED PENDING RESOLUTION OF THE PLAINTIFFS' CLAIM FOR A TEMPORARY INJUNCTION ...................................................................5

    II.    PLAINTIFF HAS A CLEAR AND SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS. ...............................................................6

CONCLUSION.......................................................................................................................8

# TABLE OF AUTHORITIES

**Codes, Rules & Statutes**

Rule 65 of the Federal Rules of Civil Procedure ..................................................................4

**Federal Cases**

AIM Intern. Trading LLC v. Valcucine SpA.,
    188 F. Supp.2d 384, 386 (S.D.N.Y. 2002)..................................................................4

Ardis Health v. Nankivell,
    2011 WL 4965172 (S.D.N.Y. 2011)..........................................................................5

Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co,
    830 F.2d 13, 15 (2d Cir. 1987)....................................................................................6

Forest City Daly Housing Inc. v. Town of North Hampstead,
    175 F.3d 144, 149-150 (2d Cir. 1999) .......................................................................4

Reuters Ltd. V. United Press Int'l Inc.,
    903 F.2d 904, 907 (2d Cir. 1990)...............................................................................5

Tom Doherty Assoc. v. Sabant Entm't,
    60 F.3d 27, 38 (2d Cir. 1995).....................................................................................5

Tucker Anthony Realty Corp. v. Schlesinger,
    888 F.2d 969, 974-975 (2d Cir. 1989) .......................................................................5

Zino Davidoff SA v. CVS Corp.,
    571 F.3d 238, 242 (2d Cir. 2009)...............................................................................4

**New York State Court Cases**

Pomeranz v. Blodnick,
    162 A.D.2d 323, 325, 556 N.Y.S.2d 902, 903 (N.Y. 1st Dept, 1990).....................6

## **PRELMINARY STATEMENT**

Plaintiffs Gopal Burgher ("Burgher") and Scott Jaffe ("Jaffe") request a temporary restraining order ("TRO") and preliminary injunction enjoining Defendant, B. Seth Bryant ("Bryant"), a partner in Bryant Burgher & Jaffe LLP ("BBJ"), from violating provisions of the partnership agreement (the "Agreement") in particular by refusing to allow plaintiff Jaffe from accessing the premises and the partnership office and client communication and file systems and both plaintiffs from accessing the bank accounts of BBJ to process ordinary fees and expenses from their practice of law.

The plaintiffs seek this Honorable Court's relief from the unilateral action of the defendant, owner of 44% of the partnership, freezing out the plaintiffs whose combined interest in the partnership totals 56%.

As a result of the defendant's actions the plaintiffs continue to suffer irreparable harm to their professional reputations. Jaffe's professional embarrassment is exacerbated by the defendant's removal of Jaffe's details and contact information from the firm's website while simultaneously retaining "Jaffe" in the name of the firm.

The defendant caused additional harm to plaintiffs by setting an auto-responder on emails sent to Jaffe's firm address stating that "Jaffe is no longer associated with BBJ" and "there is no forwarding information." Burgher is harmed by these actions because he jointly works on client matters with Jaffe and clients now receive this erroneous, disturbing and conflicting information.

Without access to the offices and communications network of BBJ Jaffe is prevented from servicing his clients, of whom he remains attorney of record, because he no longer has access to resources such as legal associates, secretaries, databases and prior

1

work product. Burgher and Jaffe are harmed by no longer being able to rely on each other's extensive professional expertise and their mutual cooperation.

Both plaintiffs lack administrative access to the firm's bank accounts for matters such as paying in fees and discharging professional expenses. The defendant even removed Jaffe from BBJ's group health insurance policy mid-month.

## FACTUAL BACKGROUND

The Agreement dates from 2009 and the parties together hold 99% of the equity. The plaintiffs each hold 28% (a total of 56%). The defendant holds 44%.

The Agreement provides for an Executive Committee (comprising no fewer than 2 and no more than 5 partners) to carry out certain executive functions on behalf of the partnership. The parties together comprised all the members of the Executive Committee at all material times.

One of the powers of the Executive Committee is the finding of "Cause" (as defined in the Agreement) for the removal of a partner or of a member of the Executive Committee; although in certain cases this power can only be exercised by the entire partnership. There is absolutely no power in the Agreement for any person or body other than the Executive Committee or the full partnership to make a finding of Cause for removal, or indeed to remove a partner or the membership of a partner in the Executive Committee. As would be expected between partners, unilateral action was prohibited and would therefore be, in every case, *ultra vires*.

After friction had developed between the parties in 2011, the defendant undertook on his own, in early 2012, to create a case for a showing of Cause for the removal of

Jaffe. He ignored the requirement of the Agreement for presentation of any such case to the Executive Committee, or to the full partnership, and on February 27, 2012 purported unilaterally and simultaneously to remove Burgher from the Executive Committee, and Jaffe as a partner. He has never provided an explanation for this action save as is expressed in what the plaintiffs refer to (and exhibit) as the "Bryant Document" dated February 27, 2012.

Unsurprisingly, the plaintiffs contested these actions, and from the end of February 2012 an uneasy stalemate ensued. Nevertheless, the parties continued in a *de facto* partnership arrangement, in the sense that each continued in his role as lawyer of the firm acting for existing (and potential new) clients. The underlying dispute was informally (and repeatedly) proposed to be referred to some form of dispute resolution, but without positive result.

This situation persisted until May 8, 2012. On that day, the defendant again acted unilaterally, to completely deny both plaintiffs access to the firm's premises and facilities, without notice, thereby effectively halting their activities as practicing lawyers. Burgher's access was restored a week later, although his access to the firm's bank accounts and his confidence in the defendant's *bona fides* were not.

Jaffe's exclusion remained unabated. Jaffe sought to discharge his professional responsibilities to clients and outside bodies as best he could while the plaintiffs and the defendant consulted attorneys. David Critchlow of Pillsbury Winthrop Shaw Pittman LLP wrote to Burgher on May 9, 2012 expressing the defendant's willingness to continue working with Burgher alone. Burgher, through Counsel, declined and continued to insist that the Agreement be followed as written. Plaintiffs attempted in good faith to

negotiate an end to increasingly intolerable conditions, but no progress was made. The plaintiffs were thus driven to file the present action and seek this provisional remedy.

## ARGUMENT

Plaintiffs are entitled to a TRO requiring the defendant to resume the status quo existing between the parties.

"The standard for granting a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are identical." AIM Intern. Trading LLC v. Valcucine SpA., 188 F. Supp.2d 384, 386 (S.D.N.Y. 2002). The movant must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 242 (2d Cir. 2009). The Second Circuit has stated that "[a]n even more rigorous standard – requiring a 'clear' or 'substantial' showing of likelihood of success – applies where an injunction will alter, rather than maintain, the status quo…" Forest City Daly Housing Inc. v. Town of North Hampstead, 175 F.3d 144, 149-150 (2d Cir. 1999).

Here, the plaintiffs will suffer irreparable harm as summarized above. Their professional lives were cut off without warning and they are prevented from providing appropriate services to their clients. The plaintiffs and the defendant formed this partnership together, and the plaintiffs' professional lives and livelihoods have been invested solely in the firm ever since. Their prospective business as lawyers would be irreparably tainted by the defendant's unlawful actions.

The plaintiffs seek restoration of the status quo between the parties, but they also meet the heightened TRO standard. The plaintiffs have a clear and substantial likelihood of success on the merits of their claim that the defendant lacked any authority for his actions from February 2012 under the terms of the Agreement that governs the relationship between the partners.

I. **PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER BECAUSE THEY WILL SUFFER IRREPARABLE HARM IF THE STATUS QUO BETWEEN THEM AND DEFENDANT BRYANT IS NOT MAINTAINED PENDING RESOLUTION OF THE PLAINTIFFS' CLAIM FOR A TEMPORARY INJUNCTION**

Showing irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction." Reuters Ltd. V. United Press Int'l Inc., 903 F.2d 904, 907 (2d Cir. 1990) (internal quotations omitted). The movant must demonstrate that the injury "is neither remote nor speculative, but actual and imminent' and cannot be remedied solely by monetary damages. Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 974-975 (2d Cir. 1989)(internal citations omitted).

The inability to control one's online presence will unquestionably have a negative impact of plaintiff's reputation and the magnitude of such effect is "difficult if not impossible to quantify in monetary terms." Ardis Health v. Nankivell, 2011 WL 4965172 (S.D.N.Y. 2011)(citing Tom Doherty Assoc. v. Sabant Entm't, 60 F.3d 27, 38 (2d Cir. 1995).

Plaintiffs are facing a harm that is actual and ongoing. As the supporting affidavits show, Jaffe's reputation continues to deteriorate with every business contact and professional colleague who sends him an email only to be told that he is no longer

5

associated with the firm with no forwarding information. Burgher's reputation continues to deteriorate with each day that he is unable to rely on Jaffe, his business partner at the firm, and every time a he needs to instruct a client of the firm to contact Jaffe only to have that client be told that Jaffe is no longer acting.

Internally, neither plaintiff has access to the firm's bank accounts for the conduct of their ordinary day to day business affairs. This affects billing, payment of legal fees and discharge of expenses.

"The question whether a preliminary injunction should be granted is generally one of federal law even in diversity actions, though state law issues are sometimes relevant to the decision to grant or deny." Baker's Aid, a Div. of M. Raubvogel Co., Inc. v. Hussmann Foodservice Co, 830 F.2d 13, 15 (2d Cir. 1987). In Pomeranz v. Blodnick New York's First Department held in a law firm partnership dispute that it was proper to grant a TRO "to prevent clients from becoming embroiled in [the] dissolution dispute and to protect plaintiffs' ongoing relationships with their clients." Pomeranz v. Blodnick, 162 A.D.2d 323, 325, 556 N.Y.S.2d 902, 903 (N.Y. 1st Dept, 1990). BBJ's sole office is within the State of New York and therefore New York law is relevant.

## II.   PLAINTIFF HAS A CLEAR AND SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

The definition of 'Cause' in relation to any proposed removal of a partner (as a partner or as a member of the Executive Committee), as well as the procedure for the determination of Cause, is contained in Article One of the Agreement (at page 3).

Article One provides that proceedings for Cause may be initiated by written notice to the Executive Committee (which is defined as comprising at least 2 partners –

definitions page 4), with a statement of facts and substantiating evidence. The Executive Committee is alone empowered to determine whether an event of Cause has occurred, save where fewer than 3 members of the Executive Committee are eligible to vote thereon, in which case the determination of Cause is to be made by the full partnership – Article One, page 3 of the Agreement.

Article One further provides that "the full partnership shall have the right to decide any question involving removal of a Partner [or] any member of the Executive Committee..." in accordance with Section 4.1A of the Agreement.

Section 4.1A of the Agreement provides that the determination of Cause by the Executive Committee requires the consent of not less than 75% of the members of the Executive Committee. A majority of Executive Committee members is required for a quorum. By its definition and by the rule determining quorum, the Executive Committee cannot act by a single member.

A supermajority of the Partners (consisting of 66 ⅔ of the Partners' Percentage Interests) is required for

- The determination of Cause where fewer than 3 members of the Executive Committee are eligible to vote (by virtue of Article One)
- The removal of a member of the Executive Committee for Cause (Article One)
- The removal of a Partner for Cause (Section 4.1A(7))

A quorum for a Partnership Meeting requires Partners holding 50% Percentage Interest in the partnership (pursuant to Section 5.1 of the Agreement).

Defendant Bryant never provided the requisite notice to the Executive Committee in February 2012. The Executive Committee included all (and only) the parties to this

7

action, and if Bryant intended to maintain that one or both of Burgher and Jaffe were ineligible to vote to determine an event of Cause on the part of Burgher or Jaffe, there would have been too few members of the Executive Committee to vote, and the authority to determine Cause was, therefore, vested solely (in the case of Burgher's prospective removal from the Executive Committee or Jaffe's removal as a Partner) in the full partnership, which was quorate only by reaching the threshold of 50% of the Partners' Percentage Interests.

There are no exceptions of exemptions under the Agreement for the procedures outlined above. Not one single step required by the Agreement was followed by Bryant, be it notice with substantiating details, or any requisite meeting to determine Cause or to take action in the event of a determination of Cause.

It is impossible for the partnership to hold any vote when both Burgher and Jaffe are not voting because the partnership would lack a quorum. Clearly Bryant knew or should have known this and the consequences are inescapable: every one of his actions is invalid.

## **CONCLUSION**

For the reasons set forth above the plaintiffs' respectfully request that this Honorable Court grant a temporary restraining order pending the hearing of the Plaintiffs' application for a preliminary injunction.

Dated:  May 22, 2012
        New York, NY

                                                       _____
                                                      Joshua E. Fingold, Esq.
                                                      of Counsel to
                                                      ALLAN J. BERLOWITZ, ESQ.
                                                      1700 Broadway
                                                      21st Floor
                                                      New York, NY 10163
                                                      (516) 336-9025